Steven J. Serbalik, Bar No. 028191
**STEVEN J. SERBALIK, P.L.C.**
4925 E. Desert Cove Ave Unit 116
Scottsdale, Arizona 85254
Telephone: (480) 269-1529
steveserbalik@gmail.com
*Attorney for Plaintiffs Aaron Cross and the
Arizona Conference of Police and Sheriffs, Inc.*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Aaron Cross, individually and the Arizona Conference of Police and Sheriffs, an Arizona nonprofit corporation, <br><br> Plaintiffs, <br><br> v. <br><br> Chris Nanos, in his official capacity as Sheriff of the Pima County Sheriff's Department; Juan Carlos Navarro, in his official capacity as a Captain of the Pima County Sheriff's Department. <br><br> Defendants. | NO. <br><br> **MOTION FOR A PRELIMINARY INJUNCTION** |

Plaintiffs move for a preliminary injunction to enjoin Chris Nanos and Juan Carlos Navarro (collectively where appropriate the "Defendants") from keeping Plaintiff Cross on administrative leave and under admonishment.

## FACTUAL BACKGROUND

Plaintiff Cross is a Pima County Sergeant who is under administrative leave due to political events he participated in - in his private capacity, on his own time, in his own attire - related to matters of public concern (*See e.g.* Complaint, *passim*). Plaintiff Arizona Conference of Police and Sheriffs ("AZCOPS") counts hundreds of Pima County sworn

police officers in its membership, and AZCOPS members face a substantial chilling effect on their ability to speak as private citizens, on matters of public concern if Plaintiff Cross' administrative leave and admonishment continues.

## LEGAL ARGUMENT

## PRELIMINARY INJUNCTION

A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In this Circuit, "if a plaintiff can only show that there are 'serious questions going to the merits' – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two Winter factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)); *see also Jordahl v. Brnovich*, 336 F.Supp.3d 1016, 1038-39 (2018) (quoting *Cottrell*). Under this serious questions variant of the *Winter* test, "[t]he elements ... must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

## LIKELIHOOD OF SUCCESS ON THE MERITS

I. **The Supreme Court and Lower Courts Recognize the Importance of Government Employees Retaining their First Amendment Rights to Comment on Matters of Public Concern**

The First Amendment, made applicable to the States by the Fourteenth Amendment, provides that "Congress shall make no law...abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble." U.S. Const. Amend. I. And citizens do not surrender these rights by accepting public employment. *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty.*, 391 U.S. 563, 568 (1968). As the Supreme Court has observed, "[i]t is fundamental that the First Amendment

was fashioned to assure an unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 548 (2001) (internal quotations omitted); *see also Jordahl*, 336 F.Supp.3d at 1039 (quoting *Velazquez*). "At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence." *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 641 (1994). Indeed,"[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by work or act their faith therein." *West Virginia Bd. of Ed. v. Barnette*, 319 U.S. 624, 642 (1943); *see also Jordahl*, 336 F.Supp.3d at 1040 (quoting *Barnette*).

## II. Government Employees Speaking on Matters of Public Concern Retain Constitutional Protections

Speech by citizens on matters of public concern lies at the heart of the First Amendment. *See Roth v. United States*, 354 U.S. 476, 484 (1957). This remains true when speech concerns information related to or learned through public employment. After all, public employees do not renounce their citizenship when they accept employment, and the Supreme Court has cautioned time and again that public employers may not condition employment on the relinquishment of constitutional rights. *See, e.g., Connick v. Myers*, 461 U.S. 138, 142 (1983); *Pickering*, 391 U.S. at 568; *Keyishian v. Bd. of Regents of Univ. of State of N.Y.*, 385 U.S. 589, 605 (1967).

*Pickering* provides the framework for analyzing whether the employee's interest or the government's interest should prevail in cases where the government seeks to curtail the speech of its employees. 391 U.S. at 568. It requires "balanc[ing] ... the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.*

In *Pickering*, the Supreme Court held that a teacher's letter to the editor of a local

newspaper concerning a school budget constituted speech on a matter of public concern. *Id.* at 571. Balancing the employee's interest in such speech against the government's efficiency interest, the Court reasoned that the publication of the letter did not "imped[e] the teacher's proper performance of his daily duties in the classroom" or " interfer[e] with the regular operation of the schools generally." *Id.* at 572–573. Thus, the Court found that the teacher's speech could not serve as the basis for his dismissal. *Id.* at 574.

In *Garcetti v. Ceballos*, the Supreme Court described a two-step inquiry into whether a public employee's speech is entitled to protection:

> "The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public."

547 U.S. 410, 418 (2006) (citations omitted).

In describing the first step in this inquiry, *Garcetti* distinguished between employee speech and citizen speech. *Id.* at 421. Whereas speech as a citizen may trigger protection, the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id*. Applying that rule to the facts before it, the Court found that an internal memorandum prepared by a prosecutor in the course of his ordinary job responsibilities constituted unprotected employee speech. *Id.* at 424.

Even when citizens have not yet spoken, the Supreme Court has recognized that their First Amendment rights are implicated if government actions create a chilling effect on their free speech, suppressing their right to participate in public affairs. *See Connick,* 461 U.S. at 145 (noting that government employees cannot be prevented or "chilled" by the fear of discharge from joining political parties and other associations that certain public officials might find subversive.). Indeed, "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 479

U.S. 64, 74-75 (1964).

Accordingly, the Supreme Court has affirmed that speech on public issues "occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection." *Connick*, 461 U.S. at 145 (quoting *NAACP v. Claiborne Hardware Co.*, 458 US 886, 913 (1982)). The fact that a public employee's speech on these issues may include "vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials" does not remove that speech from First Amendment protection. *See Garrison*, 479 U.S. at 75. To the contrary, the court has stated that "[a]t the apex of the First Amendment rests speech addressing problems at the government agency where the employee works." *Moser v. Las Vegas Metro. Police Dep't,* 984 F.3d 900, 906 (9th Cir. 2021).

### III. The Pima County Sheriff Department's Actions Restrict Government Employees' Expressive Conduct as Citizens Speaking on Matters of Public Concern, Violating their First Amendment Rights

The first prong of the employee speech analysis involves two inquiries: whether the speech is within the scope of a public employee's official duties, and whether it impacts speech on matters of public concern. *See Garcetti*, 547 U.S. at 418, 421. If the speech is protected, the question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. *Id.* Here, the court should have little difficulty in finding that Plaintiff Cross' speech was done in his capacity as a private citizen, regarded matters of public concern, and did not justify him being treated any differently than any other member of the public.

Plaintiff Cross' political activity of flag-waiving and sign-holding was clearly not within the scope of his official duties, nor pursuant to those duties. *See id.* Unlike in *Garcetti*, where the speech at issue occurred at work and was part of the tasks the deputy district attorney was paid to perform, here Plaintiff Cross was off-duty and in no way required by the Department to engage in his speech. *See id.* He was participating in political activity on a public sidewalk, outside the workplace, dressed in all of his own

personally purchased clothing and accessories, in his capacity as a private citizen and the leader of a labor organization (*See* Verified Complaint ¶¶11, 12, 14, 16, 17, 19, 20) . As such, Plaintiff Cross' speech does not fall within the unprotecting category of speech made pursuant to professional duties, and is therefore protected. *See id.* at 426.

Similarly, it is also very clear that the topic addressed during the event was of public concern. By holding a sign stating "Deputies don't want Nanos," Plaintiff Cross was expressing views on the current administration and concerns regarding how the department is being run (*See* Id. at ¶11). Given that it is an election year and Sheriff Nanos is up for re-election, Plaintiff Cross' speech is plainly a matter public concern that qualifies for First Amendment protection. *See Hernandez v. City of Phoenix,* 43 F.4th 966, 977-78 (2022) (noting that interest by only a relatively small segment of the general public is sufficient to constitute public concern). The fact that some individuals may not agree with Plaintiff Cross' comments does not remove this protection. *See id.* ("[T]he inappropriate or controversial character of a statement is irrelevant").

Plaintiff Cross participated in his public activity with other citizens (*See* Verified Complaint at ¶14), yet Defendants singled out Plaintiff Cross for disparate treatment. Defendants do not claim that those other participating individuals were in any way acting illegally or were not permitted to be wearing the same attire as Plaintiff Cross while engaging in their demonstrations. Yet Defendants, by placing Plaintiff Cross on administrative leave and admonishing him, chose to treat him differently than other members of the public despite the fact that his off-duty action did not implicate the Department. No member of the public would reasonably assume that he was acting in an official capacity as Plaintiff Cross was not wearing any department issued attire nor any County or PCSD insignia (*Id.* at ¶¶ 12, 20) . His activities also did not impede the proper performance of his daily duties at work nor interfere with the regular operation of the Department generally. *See Pickering,* 391 U.S. at 572–573. Thus, there was no reason for Defendants to treat Plaintiff Cross any differently than they would other members of the public - and by doing so, they unlawfully violated Plaintiff Cross' First Amendment rights.

### IV. **Placing Plaintiff Cross on Administrative Leave and Admonishing Him Not To Discuss His Leave Creates an Impermissible Chilling Effect**

Plaintiff Cross did not surrender his First Amendment rights when he became a public employee. By placing Plaintiff Cross on administrative leave and admonishing him from speaking about his leave, Defendants deprive him of the ability to contribute to conversations related to matters of pubic concern - violating his constitutional rights and those of AZCOPS members. The Defendants' actions create a impermissible chilling effect, deterring Plaintiff Cross and AZCOPS members from exercising their First Amendment rights. AZCOPS members will now be worried that if they speak out in their private capacity on important public issues, they too may be put on leave and/or admonished. Thus, Defendants' actions chill potential speech before it even happens. *See Bd. of Cnty. Comm'rs Wabaunsee Cnty., Kan. v. Umber*, 518 U.S. 668, 674-675 (1996) (recognizing that "constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental [actions] that fall short of a direct prohibition against the exercise of First Amendment rights").

## LIKELIHOOD OF IRREPRABLE HARM

Having established Plaintiffs' likelihood of success on the merits, the next issue is whether Plaintiffs are likely to suffer irreparable harm absent the protection of a preliminary injunction. The unqualified answer is yes. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Indeed, when the expressive conduct that is so burdened is political in nature, "[t]he harm is particularly irreparable." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009).

Defendants admonishment of Plaintiff Cross directly infringes upon his constitutional rights. Plaintiff Cross is the head of the Pima County Deputies Organization - a labor organization that has the largest number of sworn deputies in Pima County (*See* Verified Complaint at ¶23). By admonishing Plaintiff Cross and not allowing him to even speak about the fact that he is on administrative leave (*Id.* at ¶24) - while at the same time

issuing an untruthful media release regarding Plaintiff Cross' political activities (*Id.* at ¶¶27-31) - Defendants are directly impacting Plaintiff Cross' ability to communicate matters of public concern to his members and to the public. Defendants are further affecting Plaintiff Cross' First Amendment rights by placing him on administrative leave, thereby altering his work hours and preventing him from engaging in his political activity during his desired times. The Department's actions regarding Plaintiff Cross, as well as its issuance of an untruthful media release, also create a chilling effect on the members of AZCOPS - and impact a labor organization leader's ability to communicate about a political process that is ongoing and time-sensitive. As such, the harms to Plaintiffs are irreparable per se.

## **BALANCE OF EQUITIES AND THE PUBLIC INTEREST**

The Court should also find that the balance of equities tips in favor of the Plaintiffs. Defendants will experience little to no hardship by removing Plaintiff Cross from administrative leave and the admonishment regarding his speech. His off-duty political activity does not impede the proper performance of his daily duties at work nor does it interfere with the regular operation of the Department generally. *See Pickering*, 391 U.S. at 572–573. Although the Department, as a government employer, may have a general interest in regulating *certain* speech of its employees, it is expressly prohibited from doing so when - as in this case - it would trample on the First Amendment rights of Plaintiff Cross and other Pima County Sheriff Department employees. Additionally, there is little to no value in an "admonishment" in this matter - as the events under investigation already occurred, were documented in photographs, and there is no real danger that discussing this political event could foreseeably impact the findings of the internal investigation.

Plaintiffs, on the other hand, have shown a likelihood of irreparable harm if the Defendants are not prohibited from continuing down their current path - particularly because they showed no contemplation of any First Amendment balancing test prior to placing a gag order on Plaintiff Cross restricting him from commenting on his leave while concurrently issuing a false statement to the media regarding his activities. Moreover,

public interest favors an injunction as the public has a interest in ensuring First Amendment protections are upheld so that there continues to exist a free flow of information concerning public agencies and officials - especially in an election year. *See Hernandez v. City of Phoenix,* 43 F.4th 966, 976 (2022) ("The First Amendment interests at stake in this context have as much to do with the public's right to hear what an employee has to say about government operations as with the employee's right to speak freely").

## CONCLUSION

Plaintiffs have shown that they are likely to succeed on the merits of their claims, that they are likely to suffer irreparable harm in the absence of a preliminary injunction, and that the balance of equities and public interest favor an injunction. The Court, therefore, should grant Plaintiffs' request for a preliminary injunction and enjoin Defendants from keeping Plaintiff Cross on administrative leave and under admonishment. A proposed Order is submitted with this Motion.

RESPECTFULLY SUBMITTED this 17th day of October, 2024.

**STEVEN J SERBALIK, P.L.C.**

By:  /s/Steven J. Serbalik
Steven J. Serbalik
4925 E. Desert Cove Ave #116
Scottsdale, Arizona 85254
*Attorney for Plaintiffs Aaron Cross and the Arizona Conference of Police and Sheriffs, Inc.*