**BOSSÉ ROLLMAN PC**
3507 North Campbell Avenue, Suite 111
Tucson, Arizona 85719     520.320.1300

Richard M. Rollman SB#004116
rollman@bosserollman.com
Kevin J. Kristick SB#033070
kristick@bosserollman.com
Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aaron Cross, individually and the Arizona Conference of Police and Sheriffs, an Arizona nonprofit corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>Chris Nanos, in his official capacity as Sheriff of the Pima County Sheriff's Department; Juan Carlos Navarro, in his official capacity as Captain of the Pima County Sheriff's Department,<br><br>Defendants. | No. 4:24-cv-00506-RCC<br><br>**RESPONSE TO MOTION FOR A PRELIMINARY INJUNCTION** |

Defendants Pima County Sheriff Chris Nanos and Pima County Sheriff's Department ("Department") Captain Juan Carlos Navarro respond to and oppose the Motion for a Preliminary Injunction ("Motion"). This Response is supported by the accompanying Memorandum of Points and Authorities, declarations of Sheriff Nanos and Captain Navarro, and all matters of record incorporated herein by reference.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION.**

The allegations made in this case have become the basis for a wildly exaggerated political controversy based on factual distortions and misstatements of applicable law. The claim a deputy has been denied the right of free speech during an election is absolutely false. The deputy is free to express his views while off duty. But his off duty speech rights are

subject to a limitation that he may not engage in political speech while in uniform or appear as if he is in uniform. Any suggestion that this restriction is somehow unconstitutional or unlawful is a misstatement of applicable law. The restriction originates in the Hatch Act, as amended, 5 U.S.C. §§ 7321-7326, made applicable to employees of state and local agencies receiving federal funds. *See generally* 5 U.S.C. §§ 1501-1508.

Since the Hatch Act was adopted in 1939, it has become well established that government employees may not engage in political speech while in uniform, even if they are off duty. The restriction applies to both federal employees and employees of state and local agencies receiving federal funds. This restriction is not subject to a balancing test to determine if it is constitutional. The United States Supreme Court previously performed that balancing analysis and in doing so rejected the argument the restriction is unconstitutional. *See U.S. Civ. Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 564 (1973) ("Although Congress is free to strike a different balance than it has, if it so chooses, we think the balance it has so far struck is sustainable by the obviously important interests sought to be served by the limitations on partisan political activities now contained in the Hatch Act.").

The principle established in *Letter Carriers* is that the government may restrict political speech of its employees without offending the Constitution. That decision has never been overruled, and undersigned counsel is unaware of any case which has declined to accept that holding as a correct statement of constitutional law. This federally created restriction applies to local agencies receiving federal funds and has become embedded as a standard provision in established policies and regulations of government and agencies including Pima County and the Department. A failure to enforce this restriction risks the loss of federal funding relied upon by state and local law enforcement agencies to operate and keep the community safe.

As applied here, the restriction has not impaired the deputy's ability to express his political views while off duty, and he may assert he is free to do so anywhere and anytime

while off duty so long as he does not create the appearance he is in uniform. For these reasons, Plaintiffs cannot satisfy the elements required for the issuance of a preliminary injunction.[1] *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ((1) likelihood of success on the merits, (2) likelihood to suffer irreparable harm without an objection, (3) balance of equities tips in the movant's favor, and (4) an injunction is in the public interest.).

## II. SERGEANT CROSS DELIBERATELY SETS OUT TO EXPLOIT HIS EMPLOYMENT AS A DEPARTMENT DEPUTY TO FURTHER POLITICAL ACTIVITY.

The limited scope of claimed speech Plaintiffs seek to resume is holding a sign stating "Deputies Don't Want Nanos" while dressed in a Department uniform appearing as a Department Deputy. *See* Compl. Ex. A. Plaintiffs cannot claim otherwise because Plaintiff Sergeant Aaron Cross continues to campaign politically while holding the same sign, but not dressed in Department uniform or appearing as a Department Deputy. *See* Nanos Decl. at 4 (attached as Ex. A). The only logical conclusion from wanting to resume the claimed speech is Sergeant Cross feels his message is enhanced by wearing his Department uniform.

Defendants' declarations undisputedly show citizens of Pima County and Department personnel believed Sergeant Cross was in Department uniform when engaging in the claimed speech at issue in the Motion. They believed it so much that citizens complained to the Department and called 911 and some Department personnel even made anonymous complaints to the Department. *Id.* at 3.

Sergeant Cross knew exactly what he was doing and in fact planned this course of conduct, confirmed by Defendant Captain Navarro's declaration attached as Exhibit B:

> 2. On October 12, 2024, I learned Department Deputy, Sergeant Aaron Cross, had engaged in apparent political campaign activity while off duty but

---

[1] Plaintiffs recently sought a preliminary injunction in another matter against Sheriff Nanos and other defendants arising from a claim those defendants chilled Plaintiffs' speech, causing Plaintiffs to request the Court enjoin the Department from taking any employment action against Plaintiffs or even investigate complaints made to Internal Affairs about Plaintiffs, both then and in the future. This extraordinary request was denied by Hon. James A. Soto. *See generally* Order (July 25, 2024) (Case No. CV-24-00232-TUC-JAS). The case was dismissed shortly thereafter.

wearing clothing appearing to be the uniform of a Department Deputy and some Detectives. If true, this would be a violation of established policies, regulations, and laws, as I am well versed in what constitutes a Department uniform. I confirmed from a photograph received on October 12, 2024 that Sergeant Cross was in fact wearing a Department uniform, even though no Department insignia or badge was observed on the clothing or could be observed from a far distance. I came to this conclusion based on the polo shirt, pants, and boots Sergeant Cross was wearing. All three items are distinctive clothing worn by Department Deputies and some Detectives. The polo shirt, pants, and boots meet Department uniform specifications for color, design and appearance. Deputies purchase these items from a supplier of uniforms for public safety personnel. The uniform is designed to permit Department Deputies and Detectives to be immediately identified and recognized as Department Deputies and Detectives. Based on my observations, I concluded Sergeant Cross intentionally dressed in a way that made him appear as a Department Deputy.

3. I spoke with Sergeant Cross on October 12, 2024 about his political campaign activity that day while apparently wearing a Department uniform. Following my discussions with Sergeant Cross, I prepared a memorandum summarizing my interactions with Sergeant Cross. A copy of this memorandum is attached as Exhibit 1.

4. During my conversations with Sergeant Cross, I reminded him he was free to engage in political activity while off duty but he could not dress in Department uniform or appear to be dressed in Department uniform. Sergeant Cross responded that he believed he had evaded the restriction on political speech while in Department uniform because he purchased the clothing with his own money. This made no difference because the Department does not issue uniforms but instead Department Deputies and Detectives receive a Department uniform allowance to purchase items to meet the Department uniform specifications and the items Sergeant Cross wore appeared to meet those specifications by style, design, and color. They also appeared to have been purchased from the same supplier that all Department Deputies purchase uniform items from. For these reasons, I concluded Sergeant Cross was wearing the specified items of the Department uniform for Deputies and some Detectives.

5. During my conversation with Sergeant Cross, I told him to not wear items Department Deputies and Detectives wear when engaging in political activity off duty. I further told Sergeant Cross he could wear whatever he wanted when engaged in political campaigning, but he could not make himself appear to be wearing a Department uniform. Sergeant Cross asked for an email stating this, which I declined to do and instead told him I was giving him an order then and there. Sergeant Cross said he would comply with my order.

> 6. I later learned Sergeant Cross spoke with Department Lieutenant R. O'Connor in the evening on October 12, 2024, where Sergeant Cross indicated he would comply with my order. Lieutenant O'Connor prepared a memorandum summarizing his interaction with Sergeant Cross on this day. A copy of this memorandum is attached as Exhibit 2.
>
> 7. On October 14, 2024, I learned Sergeant Cross had disobeyed the order I gave him and had once again engaged in political campaigning while wearing clothing that appeared to be the uniform worn by Department Deputies and some Detectives during operations and training. I later saw a photograph taken of him and confirmed he was wearing the uniform worn by Department Deputies and Detectives during operations and training, even wearing a tactical belt holding his holstered weapon, ammunition magazine, and handcuffs. The display of the tactical belt with an openly stored gun and handcuffs further enhanced the appearance that he was an on duty Department Deputy.
>
> 8. Based on my conversations with Sergeant Cross and the photographs I observed, I am of the opinion Sergeant Cross did in fact intentionally dress in a way that made him appear to be a Department Deputy on duty while engaging in political campaign activity and did intentionally violate the order I gave him.

Ex. B at 1-2.

The conversations between Sergeant Cross and Captain Navarro and Department Lieutenant R. O'Connor confirm Sergeant Cross knew he was dressed in Department uniform or at the very least knew his dress made him appear as if he was in Department uniform. Sergeant Cross incorrectly claims it was permissible for him to do so because he was off duty and wearing clothing he purchased. *See* Mot. at 1, 5-6.

Sergeant Cross' actions interfered with Department operations and business and led citizens and Department personnel to make complaints. But for Sergeant Cross' actions and desire to exploit his position as a Department Deputy for political gain, these complaints would not have been made and this lawsuit would not be before this Court.

### III. THE HATCH ACT PROHIBITS THE SPEECH PLAINTIFFS SEEK TO RESUME.

Sergeant Cross is subject to restrictions created by the Hatch Act, applicable to the Department and Sergeant Cross under 5 U.S.C. § 1501(2) and (4) because he is an employee of the Department which is a local agency financed whole or in part by federal funding. 5 U.S.C. § 1502(a)(1) applies to state and local officers and employees and incorporates the

same restriction federal employees are subject to under 5 U.S.C. § 7323(a)(1). This same restriction, applicable to both federal employees and Sergeant Cross, states an employee "may not … use his official authority or influence for the purpose of interfering with or affecting the result of an election." 5 U.S.C. § 1502(a)(1); 5 U.S.C. § 7323(a)(1). The restriction applicable to Sergeant Cross also requires that he not use his official authority or influence to interfere with or affect the result of a nomination for office. *See* 5 U.S.C. § 1502(a)(1).

The restriction on political activity created by the Hatch Act is made specific and clear by a comprehensive scheme of Federal Regulations set out in 5 C.F.R. Part 734 pertaining to political activities of federal employees. The regulations address in detail the meaning of terms and conduct that are both permitted and prohibited and include examples to further explain the requirements of the Hatch Act. The Hatch Act is administered and enforced by the Office of Special Counsel ("OSC") under 5 U.S.C. §§ 1212 and 1214. The OSC relies on the regulations expressly directed to federal employees as guidance in determining whether a state or local employee or agency has violated the Hatch Act:

> Thus, OSC generally concludes that state and local employees violate the Hatch Act when they used their official titles, or otherwise trade on the influence of their positions by, for example, wearing their official uniforms, while engaged in political activity.

U.S. OSC Letter (Feb. 29, 2012) (attached as Ex. C).

Sergeant Cross' conduct which he seeks to have protected by injunctive relief is specifically prohibited by two regulations set out in the C.F.Rs. The first defines the types of activities prohibited by the general admonition of the statute that an employee may not take advantage of their governmental position to affect an election. 5 C.F.R. § 734.302(a)-(b)(1) addresses this and states:

> (a) An employee may not use his or her official authority or influence for the purpose of interfering with or affecting the result of an election.
>
> (b) Activities prohibited by paragraph (a) of this section include, but are not limited to:

(1) Using his or her official title while participating in political activity.

By dressing in a manner to appear as a Department Deputy, Sergeant Cross was using his official position while engaging in political activity. The second regulation, 5 C.F.R. § 734.306(a)(2), goes further and specifically prohibits wearing any item similar to the uniform of the employee. It states:

> (a) An employee may not participate in political activities subject to the provisions of subpart E of this part:
>
> …
>
> (2) While he or she is wearing a uniform, badge, insignia, or other similar item that identifies the employing agency or instrumentality or the position of the employee.

Section 306 includes a variety of examples to illustrate the application of the regulation. One such example is particularly helpful:

> Example 10: An employee of the National Aeronautics and Space Administration (NASA) may not engage in political activities while wearing a NASA flight patch, NASA twenty-year pin or anything with an official NASA insignia.

The terms of the Hatch Act applicable to Plaintiffs expressly forbid Sergeant Cross' conduct in seeking to identify himself as a Department Deputy by wearing clothing similar to the uniform of a Department Deputy. In doing so, he seeks to exploit his position to advance his political speech. He is not permitted to do so. But it does not follow that he is precluded from expressing his opinion without relying on his status as a Department Deputy. 5 U.S.C. § 1502(b) makes it clear that Sergeant Cross "retains the right to vote as he chooses and to express his opinions on political subjects and candidates." That right, however, is subject to the restriction in subparagraph (a) of the statute as implemented by the regulations.

The conduct the injunction request seeks to resume is forbidden by law. Plaintiffs are not entitled to an injunction allowing them to do something that is forbidden by law.

….

….

IV. **ESTABLISHED POLICIES AND REGULATIONS OF PIMA COUNTY AND THE DEPARTMENT PROHIBIT THE SPEECH PLAINTIFFS SEEK TO RESUME.**

Even if the Hatch Act does not apply, which Defendants contend it does, Defendants have acted reasonably and consistently with established policies and regulations of Pima County and the Department. Pima County Law Enforcement Merit System Rule ("LEMSR") XIV-1(B) prohibits Pima County employees from "us[ing] any official authority or influence in any way to affect the result of any political election or nomination." Sergeant Cross, as a Department Deputy and Pima County employee, is subject to this restriction under LEMSR II-3(A):

> These Rules shall apply to all Law Enforcement Officers of the Sheriff's Department pursuant to ARS 38-1001 et seq. and the Resolution.

Sergeant Cross' conduct not only violated LEMSR XIV-1(B) but also violated Pima County Personnel Policy ("PCSP") 8-119, made applicable to Plaintiffs under PCSP 8-100(A). Specifically, the conduct violates PCSP 8-119(I), Z(2), Z(6), and Z(8) at a minimum:

> All County employees must observe the following basic work rule principles:
>
> …
>
> I. Carry out specific orders or instructions from the immediate supervisor or another employee in charge.
>
> …
>
> Z. Prohibited conduct – County employees shall not:
>
>   2. Use or attempt to use their official positions or confidential information for financial gain or for personal advantage.
>
>   …
>
>   6. Perform any act in a private capacity which could be considered to be an official act.
>
>   …
>
>   8. Directly or indirectly use or allow the use of County property of any kind, including property leased by the County, for other than official or assigned duties.

Sergeant Cross' conduct also violated Pima County Board of Supervisors Policy D

23.9:

It is the policy of the Board of Supervisors that:

Employees have the right to participate in partisan political activities but those activities cannot influence or interfere with the conduct of official County business or activities. Notwithstanding this provision, County employees shall not a) make a political contribution and/or b) solicit or collect political contributions for any candidates for any elected County office. Nothing in this section shall prohibit Elected County officials from making contributions to political campaigns.

Considering the potential Hatch Act violations, the clear violations of established policies and regulations of Pima County and the Department, and interference with Department and Pima County operations exemplified by citizen and Department employee complaints, Sheriff Nanos had no choice but to act and did so reasonably as noted in his declaration:

6. Sergeant Cross told Captain Navarro he believed he had evaded applicable policies, regulations, and laws because he purchased the uniform items worn with his own money and did not display a badge. However, all Department Deputies purchase their uniforms according to uniform specifications established by the Department. Deputies are given a uniform allowance to purchase their own uniform to meet those specifications. The clothing worn by Sergeant Cross appears to meet most of the Department's uniform specifications, although the polo shirt did not bear the Department insignia.

7. Sergeant Cross' statements that he sought to evade applicable policies, regulations, and laws made it apparent he intentionally used the appearance of his uniform, including that of a Department Deputy and some Detectives, as a prop to enhance his political message. He could have delivered the same message without creating the appearance he was then working as a Deputy and/or Detective, but he obviously felt that message needed to be enhanced by his uniform. The right of a government employee to engage in political speech has well defined limits established by policies, regulations and laws and those limits prohibit political speech while wearing a uniform. Sergeant Cross intentionally breached those limits and in doing so disobeyed a direct order from Captain Navarro that he agreed to comply with.

8. I concluded it was necessary to address Sergeant Cross' conduct for the following reasons:

a. He violated a direct order given by Captain Navarro and was

therefore insubordinate;

  b. His conduct violated policies, regulations, and laws;

  c. His conduct created a public appearance that persons who identified themselves as Department Deputies and Detectives by their manner of dress were engaged in political activities contrary to established policies, regulations, and laws;

  d. His conduct was intentionally designed to exploit himself as a Department Deputy in the course of presenting a political message;

  e. Unless promptly addressed, his conduct created an appearance to Department employees that the Department was no longer enforcing policies, regulations, and laws intended to avoid an appearance that the Department and its employees are permitted to engage in political activities while on duty, as demonstrated by complaints attached as Exhibit 9; and

  f. Unless promptly addressed, the Department would continue receiving complaints from citizens within the community regarding Sergeant Cross' conduct, as demonstrated by complaints attached as Exhibit 10.

  9. I decided it was appropriate and in the best interest of Pima County to place Sergeant Cross on administrative leave with pay subject to further investigation into Sergeant Cross' conduct. This action demonstrates the Department will not overlook intentional disobedience of a direct order and does not approve of Department Deputies violating applicable policies, regulations, and laws governing behavior while in uniform. At the same time, this action is not a disciplinary action. Sergeant Cross continues to receive his same pay, his work schedule does not change or lose days off, and he is allowed to take vacation and sick time as normal. Furthermore, administrative leave with pay in no way restricts Sergeant Cross from engaging in political activities while not in Department uniform or appearing to be in Department uniform. In fact, Sergeant Cross has continued to engage in political campaigning while holding the same sign but not in Department uniform or appearing to be in Department uniform after being placed on administrative leave with pay. Sergeant Cross has never been told he could not engage in political activities while off duty and not dressed in Department uniform or appearing to be in Department uniform. Captain Navarro made this clear to Sergeant Cross on October 12, 2024, which Sergeant Cross understood and responded to by saying he would comply.

*See* Ex A at 2-4.

Other established policies and procedures violated by Sergeant Cross' conduct are contained in Sheriff Nanos' declaration. *Id.* at 1-2. These policies and procedures, in addition

to those discussed above, support the denial of the request for injunction.

## V. SERGEANT CROSS HAS NOT BEEN TOLD HE CANNOT TELL OTHERS HE HAS BEEN PLACED ON ADMINISTRATIVE LEAVE WITH PAY.

Plaintiffs contend Defendants instructed Sergeant Cross he could not inform others he was placed on administrative leave with pay. *See* Motion at 7; *see generally* Plaintiffs' Proposed Order. This is not true. Consequently, Sergeant Cross is free to tell others he is currently on administrative leave with pay. But he cannot inform others as to the nature of the underlying facts giving rise to being placed on administrative leave with pay, which is standard practice in law enforcement:

> 10. LEMSR XII-4 makes it clear being placed on administrative leave with pay is not a disciplinary action and Personnel Policy 8-107-A(3) permits me as appointing authority to place an employee on administrative leave with pay when I determine it "to be in the best interest of the County." Such decision was in the best interest of the County. A standard practice when placing anyone on administrative leave with pay is to advise them not to discuss details of the matter under review. The purpose of this standard practice is to prevent witnesses from sharing the substance of their statement that might be made in a potential investigation and thus leading to accusations that statements were intentionally or unintentionally altered by the recollections of others. The practice is founded on the same principle that routinely results in witnesses being excluded from a court room while another witness is testifying. However, this does not mean a person on administrative leave with pay cannot disclose to others that he or she is on administrative leave with pay. In fact, this is routinely done and permissible for Sergeant Cross to do so.

For these reasons, neither Sergeant Cross' speech nor that of any member of Arizona Conference of Police and Sheriffs have been chilled.[2]

## VI. CONCLUSION.

For all of the reasons stated above, Defendants request the Court deny the Motion.

….

---

[2] Even after being placed on administrative leave with pay on October 14, 2024, Sergeant Cross continued to engage in political campaigning on October 15, 2024 while wearing clothing that appeared to be the uniform worn by Department Deputies and some Detectives during operations and training. *See* Navarro Decl., Ex. 6.

RESPECTFULLY SUBMITTED October 25, 2024.

                                        BOSSÉ ROLLMAN PC

                                        By:  /s/ Kevin J. Kristick
                                                  Richard M. Rollman
                                                    Kevin J. Kristick
                                                  Attorneys for Defendants

**CERTIFICATE OF SERVICE**

      I hereby certify that, on October 25, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Steven J. Serbalik
STEVEN J. SERBALIK, P.L.C.
Unit 116
4925 East Desert Cove Avenue
Scottsdale, Arizona 85254
steveserbalik@gmail.com
Attorneys for Plaintiffs


By:  /s/ Bille Jo Labby