# EXHIBIT A

## DECLARATION OF CHRIS NANOS

Pursuant to 28 U.S.C. § 1746, CHRIS NANOS hereby declares under penalty of perjury under the laws of the United States, its territories, possessions, or commonwealths that the following is true and correct:

1.  I am the Sheriff of Pima County. I make this declaration upon my own personal knowledge and belief.

2.  On October 12, 2024, Pima County Sheriff's Department ("Department") received reports that Department Deputies observed a fellow Department Deputy, Sergeant Aaron Cross, apparently dressed in uniform engaging in political campaign activities on a street in Tucson, Arizona. Department staff informed me Sergeant Cross was off duty but appeared to be wearing clothing very similar to the uniform worn by Department Deputies and Detectives, even wearing a tactical belt holding his holstered weapon, an ammunition magazine, and handcuffs. No Department insignia or badge was observed on the clothing or could be observed from a far distance. Nonetheless, Department Captain Juan Carlos Navarro, through his chain of command, was asked to address this conduct. Subsequently, I learned Captain Navarro spoke with Sergeant Cross regarding his conduct and discussed the applicable Pima County policies and Department regulations that prohibit engaging in political activities while wearing clothing identifying himself as a Department Deputy. During this discussion, Captain Navarro made clear Sergeant Cross could engage in any political campaigning desired while off duty but expressly ordered him to not engage in further political activities while wearing clothing that appeared to be a Department uniform. Sergeant Cross said he understood this order and agreed to comply. At this time, I considered the matter resolved and no further action would be required.

3.  On October 14, 2024, I learned Sergeant Cross had disobeyed Captain Navarro's order and had once again engaged in political campaigning while wearing clothing that appeared to be the uniform worn by Department Deputies and Detectives, even wearing a tactical belt containing his holstered weapon, magazine, and handcuffs. Again, no Department insignia or badge was observed on the clothing or could be observed from a far distance.

4.  In deciding how to respond, I considered policies and regulations of Pima County and the Department, including but not limited to:

    a. Pima County Law Enforcement Merit System Rule ("LEMSR") XIV-1(B) ("County employees shall not … [u]se any official authority or influence in any way to affect the result of any political election or nomination."), attached as Exhibit 1;

    b. LEMSR XII, attached as Exhibit 2;

    c. Pima County Personnel Policy ("Personnel Policy") 8-107-A(3), attached as Exhibit 3;

    d. Personnel Policy 8-119-I, S, Z(2), Z(6), and Z(8) (County employees must carry out orders from immediate supervisor or another employee in charge, treat co-workers and public with respect, and must not use or attempt to use official positions for financial gain or personal advantage, act in private capacity which could be considered an official act, and directly or indirectly use County property for anything other than for official or assigned duties.), attached as Exhibit 4;

    e. Pima County Board of Supervisors Policy D 23.9 (Employees participation in partisan political activities "cannot influence or interfere with the conduct of official County business or activities."), attached as Exhibit 5;

    f. Pima County Election Activities Handout published to all Department employees on April 26, 2024, attached as Exhibit 6;

    g. Pima County Sheriff's Department Command Directive No. 2024-004, attached as Exhibit 7; and

    h. Department General Order 2024-001 Chapter 8, attached as Exhibit 8.

5. In addition to the policies and regulations noted above, the Hatch Act, as amended ("Hatch Act"), must be considered because the Hatch Act applies to state and local entities that receive federal funding. The Department has received federal funding every year in support of law enforcement activities. During the last four years, the Department received the following amounts of federal funding in support of law enforcement activities:

    a. Fiscal Year 2021: $2,133,243.87;

    b. Fiscal Year 2022: $2,040,760.30;

    c. Fiscal Year 2023: $1,954,204.93; and

    d. Fiscal Year 2024: $2,380,148.54.

Consequently, the Department is subject to the Hatch Act. Like the policies and regulations noted above, the Hatch Act strictly forbids state and local employees of a governmental entity from engaging in political activities while in uniform, even while off duty.

6. Sergeant Cross told Captain Navarro he believed he had evaded applicable policies, regulations, and laws because he purchased the uniform items worn with his own money and did not display a badge. However, all Department Deputies purchase their uniforms according to uniform specifications established by the Department. Deputies are given a uniform allowance to purchase their own uniform to meet those specifications. The clothing worn by Sergeant Cross appears to meet most of the Department's uniform specifications, although the polo shirt did not bear the Department insignia.

7. Sergeant Cross' statements that he sought to evade applicable policies, regulations, and laws made it apparent he intentionally used the appearance of his uniform, including that of a Department Deputy and some Detectives, as a prop to enhance his political message. He could have delivered the same message without creating the appearance he was then working as a Deputy and/or Detective, but he obviously felt that message needed to be enhanced by his uniform. The right of a government employee to engage in political speech has well defined limits established by policies, regulations and laws and those limits prohibit political speech while wearing a uniform. Sergeant Cross intentionally breached those limits and in doing so disobeyed a direct order from Captain Navarro that he agreed to comply with.

8. I concluded it was necessary to address Sergeant Cross' conduct for the following reasons:

    a. He violated a direct order given by Captain Navarro and was therefore insubordinate;

    b. His conduct violated policies, regulations, and laws;

    c. His conduct created a public appearance that persons who identified themselves as Department Deputies and Detectives by their manner of dress were engaged in political activities contrary to established policies, regulations, and laws;

    d. His conduct was intentionally designed to exploit himself as a Department Deputy in the course of presenting a political message;

    e. Unless promptly addressed, his conduct created an appearance to Department employees that the Department was no longer enforcing policies, regulations, and laws intended to avoid an appearance that the Department and its employees are permitted to engage in political activities while on duty, as demonstrated by complaints attached as Exhibit 9; and

    f. Unless promptly addressed, the Department would continue receiving complaints from citizens within the community regarding Sergeant Cross' conduct, as demonstrated by complaints attached as Exhibit 10.

9. I decided it was appropriate and in the best interest of Pima County to place Sergeant Cross on administrative leave with pay subject to further investigation into Sergeant Cross' conduct. This action demonstrates the Department will not overlook intentional disobedience of a direct order and does not approve of Department Deputies violating applicable policies, regulations, and laws governing behavior while in uniform. At the same time, this action is not a disciplinary action. Sergeant Cross continues to receive his same pay, his work schedule does not change or lose days off, and he is allowed to take vacation and sick time as normal. Furthermore, administrative leave with pay in no way restricts Sergeant Cross

from engaging in political activities while not in Department uniform or appearing to be in Department uniform. In fact, Sergeant Cross has continued to engage in political campaigning while holding the same sign but not in Department uniform or appearing to be in Department uniform after being placed on administrative leave with pay. Sergeant Cross has never been told he could not engage in political activities while off duty and not dressed in Department uniform or appearing to be in Department uniform. Captain Navarro made this clear to Sergeant Cross on October 12, 2024, which Sergeant Cross understood and responded to by saying he would comply.

10. LEMSR XII-4 makes it clear being placed on administrative leave with pay is not a disciplinary action and Personnel Policy 8-107-A(3) permits me as appointing authority to place an employee on administrative leave with pay when I determine it "to be in the best interest of the County." Such decision was in the best interest of the County. A standard practice when placing anyone on administrative leave with pay is to advise them not to discuss details of the matter under review. The purpose of this standard practice is to prevent witnesses from sharing the substance of their statement that might be made in a potential investigation and thus leading to accusations that statements were intentionally or unintentionally altered by the recollections of others. The practice is founded on the same principle that routinely results in witnesses being excluded from a court room while another witness is testifying. However, this does not mean a person on administrative leave with pay cannot disclose to others that he or she is on administrative leave with pay. In fact, this is routinely done and permissible for Sergeant Cross to do so.

PURSUANT TO 28 U.S.C. § 1746, I HEREBY DECLARE (OR CERTIFY, VERIFY, OR STATE) UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED on this 24 day of October 2024.

By: _____
CHRIS NANOS