Steven J. Serbalik, Bar No. 028191
**STEVEN J. SERBALIK, P.L.C.**
4925 E. Desert Cove Ave Unit 116
Scottsdale, Arizona 85254
Telephone: (480) 269-1529
steveserbalik@gmail.com
*Attorney for Plaintiffs Aaron Cross and the*
*Arizona Conference of Police and Sheriffs, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Aaron Cross, individually and the Arizona Conference of Police and Sheriffs, an Arizona nonprofit corporation, <br><br> Plaintiffs, <br><br> v. <br><br> Chris Nanos, in his official capacity as Sheriff of the Pima County Sheriff's Department; Juan Carlos Navarro, in his official capacity as a Captain of the Pima County Sheriff's Department. <br><br> Defendants. | NO. 4:24-cv-00506-RCC <br><br> **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

Both the Verified Complaint - and the Response and Exhibits - conclusively demonstrate the following - Plaintiff Aaron Cross was placed on administrative leave and issued an admonishment - a gag order - for participating in an off-duty protest while wearing his own, personally issued clothing and not a single decal, logo, patch or marking identifying him as a Pima County Deputy. And the Sheriff intends on punishing any other member of the Sheriff's Department that would do so in the future - including other members of Plaintiff AZCOPS. Because 1) all actions in this matter indisputably occurred off-duty (and did not involve any "official" acts by the protestors); and 2) no PCSD

uniforms were worn, it is unlawful for Defendant Nanos to initiate and maintain adverse employment actions against Plaintiff Cross or any other AZCOPS member.

**FACTUAL AGREEMENTS**

All parties in this matter acknowledge 1) Plaintiff Cross was off-duty on the times of his protests; and 2) Plaintiff Cross did not wear any PCSD logos, badges, patches, or identifiers. The parties also agree that a PCSD uniform is defined through publicly available policies - which were provided by Defendants as an attachment to their Response. Specifically, every "uniform" for PCSD involves "required accessories" which are 1) Department shoulder patches on each sleeve; 2) a nameplate or embroidered name 3) appropriate rank insignias (here Sergeant Cross would have required sergeant chevrons on each sleeve; and 4) a badge (Doc. 8-2 pp. 27-28; 29). The parties agree that Plaintiff Cross was wearing none of these "required accessories" on any of the days in question.

The parties also agree, that on the second day that Plaintiff Cross conducted his off-duty protest (which sparked his forced leave and admonishment), he looked like this:



(Doc. 8-6 p. 14).

The parties further agree that, without intervention from the Court, Plaintiff Cross cannot discuss the facts behind his protest, as he currently faces an "admonishment" which could result in him facing disciplinary action should he speak with other members of PCSD or the media about his actions on October 12 and October 14.

## LEGAL ARGUMENT

In their original Motion, Plaintiffs discussed the *Winter* factors that the Court should address in deciding whether to issue a preliminary injunction, and therefore will not repeat them in detail here. Therefore, for their reply, Plaintiffs will address the following supplemental issues raised in Defendants' Response: 1) The Hatch Act's relevant terms as applied to local officials only prohibits using official authority or influence to interfere with or affect the results of an election or nomination; 2) Relevant caselaw demonstrates that retaliatory investigations and associated actions can constitute sufficient action to violate the First Amendment rights of employees; and 3) no recorded cases in Arizona or the Ninth Circuit would allow an off-duty employee to be subject to adverse employment actions for off-duty conduct without either a) using official authority or b) displaying logos, badges, patches or other protected insignia of the employer.

**I.** **The Hatch Act's relevant provisions related to state and local employees only prohibits using official authority or influence to interfere with or affect the results of an election or nomination.**

The Hatch Act is a federal law that largely applies to employees of the federal government, with limited terms that apply to grant-funded state and local employees (See Office of Special Counsel's fact page - accessible at https://osc.gov/Services/Pages/HatchAct-StateLocal.aspx and 5 U.S.C. §1501-1508). §1502(a)(1) is the only subsection of the Hatch Act relevant to this matter, and it states "A state or local officer or employee may not use his official authority or influence for the purpose of interfering with or affecting the result of an election or nomination for office." Subsection b also makes it clear that "A state or local officer or employee retains the right to vote as he chooses and to express his opinions on political subjects and candidates."

Here, the agreed-upon facts before the Court show that Plaintiff Cross was off-duty,

3

and was undoubtedly expressing the belief of himself (and many of his AZCOPS members) by participating in a public protest - and expressing his opinion on a specific candidate - Defendant Nanos.

Additionally, the agreed-upon facts would show that *any* member of the public should have been able to join Plaintiff Cross in his protest - and they could have worn the same things - as nothing about his attire was illegal to wear in the state of Arizona.

Specifically, the attire worn by Plaintiff Cross on the first day was not - and could not be - restricted by any state or local law. There is nothing prohibiting any member of the public from wearing a tan shirt, pants, and a sidearm. There is no evidence that Plaintiff Cross or anyone else present took law enforcement actions, or otherwise made anyone yield to their authority (*See* A.R.S. §13-2411 defining impersonating a police officer and including the requirement that there must be conduct with the intent to induce another to submit to pretended authority or otherwise rely on pretended acts). They simply stood at a street corner, wearing attire that is generally available to the public, and held up signs that expressed their views on an upcoming election.

Nothing on the October 12, 2024 protest could be reasonably construed to constitute a use of official authority or influence - and therefore cannot constitute a violation of the Hatch Act.

This same analysis applies with even more force to the October 14, 2024 protest. On that date, Plaintiff Cross stood at a street corner wearing attire that *looks nothing like* the PCSD uniform. As the photo above shows, Plaintiff Cross was simply holding a sign while wearing a grey tee-shirt, khaki pants, and brown footwear - all attire that is decidedly *out of uniform* for any PCSD deputy (*see* Doc. 8-2, *generally*) and - once again - contained no logos, insignia, badges, or other identifying marks related to the Sheriff's Department. Yet that is the incident that resulted in him being placed on administrative leave and admonished from discussing his protests.

**II.    Relevant caselaw demonstrates that retaliatory investigations and associated actions can constitute sufficient action to violate the First Amendment rights**

**of employees.**

Defendants argue that placing Plaintiff Cross on administrative leave and issuing him a gag order does not constitute formal discipline - and therefore cannot serve as a basis for a preliminary injunction. This is wrong as a matter of law.

The actual standard for evaluating whether employment actions are sufficient to trigger First Amendment concerns is discussed in *Ulrich v. City and Cnty of San Francisco*, 308 F.3d 968 (9th Cir. 2002). The Ninth Circuit held that, to show that an individual was subject to adverse employment actions, a plaintiff only needs to "demonstrate only that he suffered a loss of any 'governmental benefit or privilege' in retaliation for protected speech activity, not that he had a legal right to the benefit denied him" (308 F. 3d at 977, *citing Hyland v. Wonder*, 972 F.3d 1129, 1134-35 (9th Cir. 1992)). The *Ulrich* court further held that the "denial of even a 'trivial' benefit may form the basis for a First Amendment claim where the aim is to punish protected speech" (*Ulrich*, 308 F.3d at 977 *citing Rutan v. Republican Party of Ill.*, (497 U.S. 62, 75-76). In *Ulrich*, the plaintiff was "subjected to more than trivial adverse employment actions" when he was subjected to"to an investigation that threatened to revoke his clinical privileges" (*Id.*).

Similarly, in *Dodge v. Evergreen School District #114*, (No. 21-35400, 9th Cir. 2022), the Ninth Circuit held that a school principal merely *hinting* that an investigation or disciplinary action could occur in response to protected speech can create a chilling effect sufficient to trigger First Amendment protections.

The relevant consideration for the Court is whether the employer's actions are "reasonably likely to deter" First Amendment activities by employees (*See Greisen v. Hanken*, 925 F.3d 1097, 1113 (9th Cir. 2019).

In this case, Plaintiff Cross was placed on administrative leave - and is no longer able to enter PCSD facilities without an escort, was forced to turn over his PCSD-issued gear, had his access to PSCD technology restricted, and cannot perform his normal job functions. He also faces a continuing order that prevents him from discussing his protest activities, and should he discuss his protests with his AZCOPS members or with the

public, he would be violating a direct order subjecting him to further discipline.

A reasonable police officer - and other members of AZCOPS - would certainly be deterred from participating in off-the-clock political activities if they knew that such activity could result in them being banished from PCSD facilities and ordered to not discuss their activities with others. Therefore, Plaintiffs made a sufficient showing that a Sheriff may not chill this type of First Amendment activity through the retaliatory use of administrative leave and gag orders.

### III. No recorded cases in Arizona or the Ninth Circuit would allow an off-duty employee to be subject to adverse employment actions for off-duty conduct without either a) using official authority or b) displaying logos, badges, patches or other protected insignia of the employer.

Should this Court deny the Motion for a Preliminary Injunction - and allow a law enforcement agency to reassign employees and prohibit them from speaking as a result of them protesting off-duty while wearing their own attire, it would be an unprecedented restriction of First Amendment rights that is wholly unrelated to any other available case in Arizona or the Ninth Circuit.

On the other hand, if Plaintiff Cross had displayed PCSD patches - or worn a badge - the Arizona Court of Appeals recognized that this type of conduct could result in disciplinary action. In *State v. McLamb* (188 Ariz. 1 (App. Div. 1 1996)) the Court of Appeals evaluated a Phoenix ordinance that proscribed the unauthorized wearing of the official insignia of the Phoenix Police Department after a retired officer wore the PPD patch while manning a booth at a gun show. The plaintiff in that case argued that he had a First Amendment right to wear his "retirement uniform" after he was cited for violating the ordinance.

The Court of Appeals quickly dismissed this claim - as it found that the City of Phoenix "has a legitimate governmental interest in regulating the use of its official insignia" since "The police insignia has a 'communicative force all its own'" (188 Ariz. at 8, *citing Thomas v. Whalen*, 51 F.3d 1285, 1291 (6th Cir. 1995), *cert. denied* 116 S.Ct. 518). This core factual consideration - the display of official insignia - was also the key

factor in *Thomas v. Whalen* (51 F.3d 1285 (6th. Cir. 1995)) when the court held that police officers can be disciplined for unauthorized activity "while wearing official insignia" of a police department (*Id. at* 1286).

Even Defendants' Response includes the "particularly helpful" example of prohibited activity *related to insignia*:
> Example 10: An employee of the National Aeronautics and Space Administration (NASA) may not engage in political activities while wearing a NASA flight patch, NASA twenty-year pin or anything with an official NASA insignia (Resp. At 7).

But what is *missing* from this "example" is *any* indication that wearing an unmarked flight suit, or business attire, or even a replica space suit during campaigns would somehow subject an employee to disciplinary action or otherwise violate any law. And for good reason - while patches, official pins, and insignia may not be worn during political activity, NASA doesn't claim to restrict the colors that campaigners may wear. And this Court should not be the first one in the nation to find such an expansion of the campaign restrictions when evaluating off-duty, First Amendment activity.

Here, in contrast, Plaintiffs appear to argue that the Department can restrict what *styles* and *colors* that off-duty employees can wear during protests - and that they alone can subjectively determine that outfits are "too similar" to elements of the PCSD uniform. And, based upon the facts of the October 14, 2024 protest, it appears that this prohibition would include prohibiting an employee from wearing *any* tee-shirt or pants at a protest - even if these colors are different than the colors composing the PCSD uniform - and the clothing lacks any police insignia. This restriction is not supported by the law.

### IV. Conclusion

Plaintiff Cross faces both a retaliatory employment action (placement on administrative leave) and an ongoing gag order (the admonishment) that prohibits him from exercising his First Amendment rights to comment on the upcoming election. This also chills the rights of other PCSD members of AZCOPS. For the reasons stated in the Verified Complaint, the Motion, and this Reply, Plaintiffs respectfully request that their Motion be granted and that a Preliminary Injunction be issued.

RESPECTFULLY SUBMITTED this 27th day of October, 2024.

**STEVEN J SERBALIK, P.L.C.**

By: /s/Steven J. Serbalik
Steven J. Serbalik
4925 E. Desert Cove Ave #116
Scottsdale, Arizona 85254
*Attorney for Plaintiffs Aaron Cross and the Arizona Conference of Police and Sheriffs, Inc.*