**BOSSÉ ROLLMAN PC**
3507 NORTH CAMPBELL AVENUE, SUITE 111
TUCSON, ARIZONA 85719    520.320.1300

Richard M. Rollman SB#004116
rollman@bosserollman.com
Kevin J. Kristick SB#033070
kristick@bosserollman.com
Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aaron Cross, individually and the Arizona Conference of Police and Sheriffs, an Arizona nonprofit corporation, | No. 4:24-cv-00506-RCC |
| Plaintiffs, | **MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| Chris Nanos, in his official capacity as Sheriff of the Pima County Sheriff's Department; Juan Carlos Navarro, in his official capacity as Captain of the Pima County Sheriff's Department, | |
| Defendants. | |

Defendants move for summary judgment on all claims in Plaintiffs' Second Amended Complaint (Doc. 31) ("Complaint"). This Motion is supported by the accompanying Memorandum of Points and Authorities, Defendants' Separate Statement of Material Facts ("DSOF[1]"), and all matters of record, which are incorporated herein by reference. For the reasons set forth below, there is no genuine dispute of material fact and Defendants are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

### MEMORANDUM OF POINTS AND AUTHORITIES

I.    INTRODUCTION.

The Federal claims in the Complaint arise from three separate events. First, a dispute

---

[1] Defendants shall use the designation "DSOF ¶__" to refer to Defendants' Separate Statement of Material Facts and the appropriate paragraph number.

regarding attire Plaintiff Sergeant Aaron Cross wore off-duty while engaging in political activity and whether his attire and conduct violated the Hatch Act. Second, interviews of Sgt. Cross related to pending administrative investigations. Third, a single text message (Ex. G to the Complaint) pertaining to union recruiting at an upcoming Pima County Sheriff's Department ("PCSD") academy. The Complaint does not contain an allegation that any of these Federal claims arose from a custom or practice of PCSD. Summary judgment must therefore be granted on these Federal claims to the extent liability is asserted against Defendants in their official capacity as members of PCSD. *See Monell v Dep't of Sos. Servs. of City of N.Y.*, 436 U.S. 658, 695 (1978) (To find liability against local government under § 1983, an unconstitutional custom or policy violation must occur.).

The Federal claims based on a violation of the Hatch Act must be dismissed against the individual Defendants because there is no clearly established law preventing enforcement of the Hatch Act against an off-duty deputy intentionally wearing attire to appear as an on-duty deputy engaging in political activity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (Government individuals are generally entitled to qualified immunity to a § 1983 claim if "their conduct does not violate clearly established statutory or constitutional rights…."). This Court already found Sgt. Cross violated the Hatch Act. *See* Order (Doc.11) ("Order") at 2 ("The Court can conclude … that Plaintiff Cross was certainly attempting to look like an on-duty deputy. It appears to the Court, the use of a firearm, handcuffs, tactical gear, and boots was done with this intention, and the Hatch Act precludes such conduct."). The Law of the Case doctrine precludes re-litigating this issue warranting summary judgment on all claims related to the Hatch Act. *See Arizona v. California*, 460 U.S. 605, 618 (1983) ("As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."). The finding that the Hatch Act was violated is final and the time to appeal has expired.

The Federal claims, including retaliation, pertaining to interviews related to

BOSSÉ ROLLMAN PC
3507 NORTH CAMPBELL AVENUE, SUITE 111
TUCSON, ARIZONA 85719   520-320-1300

administrative investigations must be dismissed. There is no clearly established law prohibiting an interview of a deputy pertaining to his knowledge of a criminal or administrative investigation, especially where the deputy interviewed offered to receive written discipline for conduct at issue in the investigation, i.e., Internal Affairs Case No. 25-004 involving the Hatch Act conduct of this case. *See* DSOF ¶¶ 13-14, 31. Similarly, the Federal claims based on an alleged restriction of speech at the training academy must also be dismissed because there is no clearly established law prohibiting restrictions on speech at a training academy, particularly where other opportunities to engage in speech in the workplace are available and unrestricted. *Id.* ¶ 27. Defendants are therefore entitled to dismissal of the Federal claims based on qualified immunity.

Other than Federal claims, Plaintiffs advance State law claims related to the same three events noted above. Plaintiffs' response to written discovery and disclosure support summary judgment on these State law claims for the reasons the Federal claims should be dismissed. Plaintiffs admitted Sgt. Cross did not receive "disciplinary action" as defined in A.R.S. § 38-1101(3) and therefore the alleged violations are not within the scope of the Arizona Peace Officer Bill of Rights, A.R.S. § 38-1101 *et seq.* ("POBR"). *See* DSOF ¶ 20. Similarly, Plaintiffs admitted labor organizations have alternative means to solicit recruits in the workplace other than at the academy and do so, warranting summary judgment on all claims pertaining to union activity. *Id.* ¶ 27. Lastly, Plaintiffs have not substantively alleged damages resulting from Defendants' conduct except for attorney's fees and time spent in this litigation. *Id.* ¶ 28. These are not legally cognizable harms, nor physical injuries required for negligence, warranting summary judgment. The only other harm Plaintiffs note in their disclosure is one sentence that Sgt. Cross "may seek damages" based on placement on administrative leave with pay. *Id.* ¶ 29. But Plaintiffs have not asserted Sgt. Cross did in fact suffer economic harm or disclosed a calculated amount. *Id.* ¶ 30. It is now too late to do so because discovery and disclosure concluded. *See* Order (Doc. 42) at 1-2. Thus, Plaintiffs' ability to assert and substantiate damages expired.

BOSSÉ ROLLMAN PC
3507 NORTH CAMPBELL AVENUE, SUITE 111
TUCSON, ARIZONA 85719    520-320-1300

Because Plaintiffs have not alleged or suffered a concrete or particularized injury, Plaintiffs have failed to satisfy the injury in fact requirement to proceed in this Court. *See Transunion LLC v. Ramirez*, 141 S.Ct. 2190, 2205 (2021) (Standing requires a concrete injury.). All claims should therefore be dismissed.

For these reasons and the additional reasons set forth below, summary judgment is appropriate.

## II.   FACTS.

This case originated from Sgt. Cross campaigning while "certainly attempting to look like an on-duty deputy," intentionally wearing "a firearm, handcuffs tactical gear, and boots," and holding a sign stating "Deputies Don't Want Nanos." *See* DSOF ¶ 1. Sgt. Cross campaigned initially on October 12, 2024, leading to reports and complaints filed by fellow Pima County Sheriff's Department ("PCSD") personnel and citizens that a deputy dressed in uniform was engaging in political activity. *Id*. ¶ 2. Capt. Juan Carlos Navarro ordered Sgt. Cross on October 12, 2024 to not engage in further political campaigning while wearing clothing appearing to be a PCSD uniform. *Id*. ¶ 3. However, Capt. Navarro stressed Sgt. Cross could still engage in off duty campaigning but must comply with the dress limitation. *Id*. ¶ 4. Sgt. Cross agreed to comply with the order. *Id*. ¶ 5. Nonetheless, on October 14, 2024, Sgt. Cross disobeyed the direct order and continued to campaign while wearing clothing appearing to be a PCSD uniform, leading to additional reports and complaints filed thereby continuing the disruption and interference with PCSD's operations and business. *Id*. ¶ 6. Consequently, Sgt. Cross was placed on administrative leave with pay on October 14, 2024 pending investigation into his conduct. *Id*. ¶ 7. Importantly, the placement on administrative leave with pay did not dissuade Sgt. Cross from engaging in the same political activity because he campaigned the next day, October 15, 2024, wearing the same clothing as worn on October 14, 2024 and holding the same sign. *Id*. ¶ 8. Eventually, Sgt. Cross initiated this lawsuit and moved for an injunction which the Court denied. *Id*. ¶ 9.

Through written discovery, Sgt. Cross admitted he wore handcuffs while campaigning

BOSSÉ ROLLMAN PC
3507 NORTH CAMPBELL AVENUE, SUITE 111
TUCSON, ARIZONA 85719    520-320-1300

"in case [he] need[ed] to restrain movements of another individual." *Id*. ¶ 10. He also admitted that the clothing and items worn while campaigning, except the gray shirt worn on October 14, 2024, were purchased through PCSD's approved clothing and equipment vendor using a stipend PCSD issued to Sgt. Cross for purchase of PCSD clothing and equipment, just like all other PCSD personnel. *Id*. ¶ 11. This includes "firearm, handcuffs, tactical gear, and boots." *Id*. ¶ 12.

The investigation into Sgt. Cross' conduct resulted in the issuance of a Letter of Reprimand which he offered to receive and PCSD accepted and issued. *Id*. ¶ 13. Sgt. Cross offered to receive a written reprimand partly due to the conduct at issue in this litigation related to the Hatch Act, i.e., Internal Affairs Case No. 25-004. *Id*. ¶ 14. Despite offering to receive a Letter of Reprimand which Sgt. Cross admits is binding, Sgt. Cross now disputes he offered to do so and even grieved the Letter of Reprimand before the Pima County Grievance Committee ("Grievance Committee") per applicable Pima County Law Enforcement Merit System Rules. *Id*. ¶ 15. But Sgt. Cross' own submission to the Grievance Committee undisputedly shows he offered to receive a written reprimand for the conduct at issue in Internal Affairs Case No. 25-004 and the report for Internal Affairs Case No. 25-004 relates to the Hatch Act conduct, corroborated by the interview transcript of Sgt. Cross in Internal Affairs Case No. 25-004. *Id*. ¶ 16. Thus, Sgt. Cross admitted his political campaigning was wrongful. *Id*. ¶ 17.

As mentioned above, despite offering to receive a written reprimand and admittedly bound by this offer, Sgt. Cross grieved the Letter of Reprimand subsequently issued resulting in the Grievance Committee concluding the Letter of Reprimand was rightfully issued and should remain because of Sgt. Cross' conduct. *Id*. ¶ 18. Following completion of the investigation and issuance of the Letter of Reprimand, Sgt. Cross was reassigned to the PCSD Telephone Reporting Center. *Id*. ¶ 19. Sgt. Cross admits Sheriff Nanos has the authority to make reassignments within PCSD and that throughout the process at issue in the Complaint he did not receive discipline rising to the level of suspension or higher, a requirement for

BOSSÉ ROLLMAN PC
3507 NORTH CAMPBELL AVENUE, SUITE 111
TUCSON, ARIZONA 85719   520-320-1300

"disciplinary action" under POBR. *Id*. ¶¶ 20-21.

Lastly, Sgt. Cross contends one text message (Ex. G to the Complaint) wrongfully restricts Plaintiffs from recruiting at one academy. However, Plaintiffs admitted:

> [L]abor organizations may and do discuss employee organization activities with PCSD personnel, including but not limited to deputies and recruits, by hard copy and electronic notices posted on PCSD bulletin boards displayed in PCSD offices and online email solicitations and notifications on PCSD servers, and by other means such as personal contact.

*Id*. ¶ 22. Importantly, the limitation on recruiting at the academy was for all labor organizations and not just Arizona Conference of Police and Sheriffs. *Id*. ¶ 23. Moreover, Exhibit G to the Complaint is simply a text message response from PCSD Chief Gerard Moretz to a request for more information pertaining to that upcoming PCSD academy and whether labor presentations and discussions were permitted. *Id*. ¶ 24. The text message continues PCSD's decision made in April 2024 to not permit any labor organizations to recruit at the academy saving PCSD money and avoiding having to end an academy day early because of recruiting efforts. *Id*. ¶ 25. This ensures recruits are permitted to focus their time and efforts on graduating the academy with the skills and training necessary to become law enforcement officers. *Id*. ¶ 26. Notwithstanding, labor organizations and PCSD employees including deputies have alternative opportunities when instruction is not taking place to discuss union membership and activity with PCSD personnel in the workplace, including deputies and recruits, which Plaintiffs admitted, and by other means such as personal contact that does not interfere with performance of official duties, including but not limited to locations other than academy grounds. *Id*. ¶ 27.

## III. LAW.

### A. STANDARD FOR GRANTING SUMMARY JUDGMENT.

The Court shall grant summary judgment if "there is no genuine dispute as to any material fact and [Defendants are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Beard v. Banks*, 548 U.S. 521, 529 (2006). Summary judgment is not disfavored, but rather an invaluable piece of the Federal Rules of Civil Procedure protecting a defendant's

BOSSÉ ROLLMAN PC
3507 NORTH CAMPBELL AVENUE, SUITE 111
TUCSON, ARIZONA 85719   520-320-1300

right to prove a claim has no factual basis. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Murray v. Kindred Nursing Ctrs. W. LLC*, 789 F.3d 20, 24-25 (1st Cir. 2015) (avoid[s] "full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways.").

To defeat summary judgment, there must be an evidentiary basis for a rational factfinder to find in favor of Plaintiffs on a fact affecting the outcome of this case. *See Melton v. Abston*, 84 F.3d 1207, 1219 (11th Cir. 2016); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-252 (1986). It is not enough to survive summary judgment for Plaintiffs to merely produce a "scintilla" of favorable evidence, colorable evidence, or simply imply doubt. *See Anderson*, 477 U.S. at 247-252; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986). Nor is it enough for Plaintiffs to produce an affidavit controverted by incontestable evidence. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). Rather, Plaintiffs must adequately prove through admissible evidence all essential elements of their case for this Motion to be denied. *See Celotex Corp.*, 477 U.S. at 322-323 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). Defendants simply identifying lack of evidence to support Plaintiffs' claim is enough for entry of summary judgment. *See Celotex Corp.*, 477 U.S. at 323.

B.    THE COMPLAINT FAILS TO PLEAD FEDERAL JURISDICTION.

The Complaint fails to sufficiently plead federal jurisdiction because it does not satisfy Article III standing requirements. The requirement of a concrete injury to satisfy standing was explained in *Transunion LLC v. Ramirez*, 141 S.Ct. 2190, 2205 (2021):

> Importantly, this Court has rejected the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U. S., at 341, 136 S.Ct. 1540. As the Court emphasized in *Spokeo*, "Article III standing requires a concrete injury even in the context of a statutory violation." *Ibid*.

The only damages pled in the Complaint are "time and money" to prosecute Plaintiffs'

BOSSÉ ROLLMAN PC
3507 NORTH CAMPBELL AVENUE, SUITE 111
TUCSON, ARIZONA 85719   520-320-1300

claims. *See e.g.*, Compl. ¶¶ 77, 79, 87, 94, 96, 104, 112, 114, 122, 132, 148; *see also* DSOF ¶ 28. No physical or economic injury has been alleged or disclosed. *See* DSOF ¶ 28. The incurrence of legal fees and time is insufficient. *See generally Daimlerchrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[P]laintiff must demonstrate standing for each claim he seeks to press. *See Allen*, 468 U.S., at 752 ('[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the *particular claims* asserted' (emphasis added)). We have insisted, for instance, that 'a plaintiff must demonstrate standing separately for each form of relief sought.'"); *see also* Fed. R. Civ. P. 8(a).

Standing does not exist for this case to proceed and therefore summary judgment should be awarded on this basis alone.

C.     DEFENDANTS ARE IMMUNE FROM ALL CLAIMS IN THE COMPLAINT.

To the extent Plaintiffs' Federal claims advanced against Defendants are in their representational capacities, the claims fail under *Monell* unless Plaintiffs can demonstrate an unconstitutional custom and policy:

> Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.

*City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-824 (1985). Plaintiffs admit in paragraph 13 of the Complaint that no policy exists related to the Hatch Act claims. *See* Compl. ¶ 13. Thus, *Monell* bars liability against Defendants on the Federal claims related to the Hatch Act. As for the remainder of the Federal claims, no unconstitutional custom and policy are alleged in the Complaint and therefore all Federal claims fail under *Monell*.

Additionally, qualified immunity bars liability against Defendants on all Federal claims. Government individuals performing discretionary functions are generally entitled to

BOSSÉ ROLLMAN PC
3507 NORTH CAMPBELL AVENUE, SUITE 111
TUCSON, ARIZONA 85719   520-320-1300

qualified immunity to a § 1983 claim if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow*, 457 U.S. at 818. "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) (quoting *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix*, 577 U.S. at 12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Nothing has been alleged in the Complaint to support liability against Capt. Navarro for acting in accordance with the Hatch Act, as amended, and established policies and regulations of Pima County and PCSD, or why it was improper to interview Sgt. Cross who did not receive "disciplinary action." *See* DSOF ¶ 20. The same reasons support application of qualified immunity for Sheriff Nanos. In short, Plaintiffs cannot and have not identified functions performed by the named individuals for liability. Nor have Plaintiffs claimed the conduct of these individuals would be perceived by a reasonable person to have violated Plaintiffs' statutory or constitutional rights, confirmed by the Grievance Committee's decision for the Letter of Reprimand to remain as issued following administrative review involving review of documents and witness testimony. *Id.* ¶ 18. Consequently, qualified immunity bars liability against Sheriff Nanos and Capt. Navarro:

> With these concerns in mind, the *Harlow* Court refashioned the qualified immunity doctrine in such a way as to "permit the resolution of many insubstantial claims on summary judgment" and to avoid "subject[ing] government officials either to the costs of trial or to the burdens of broad-reaching discovery" in cases where the legal norms the officials are alleged to have violated were not clearly established at the time. *Id.*, at 817-818, 102 S.Ct., at 2737-2738. Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. *See id.*, at 818, 102 S.Ct., at 2738.

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The application of qualified immunity barring all Federal claims is supported by

BOSSÉ ROLLMAN PC
3507 NORTH CAMPBELL AVENUE, SUITE 111
TUCSON, ARIZONA 85719   520-320-1300

*Pickering v. Bd. Of Educ. Of Twp. High Sch. Dist. 205, Will Cty., Ill.*, 391 U.S. 563 (1968). The *Pickering* Court created a balancing test applicable to speech cases related to public employees where the interests of the public employee in speaking on matters of public concern are weighed against the interest of the governmental entity, employer, in promoting efficiency of the public services rendered. *See Pickering*, 391 U.S. at 568. Here, the Court already concluded the Hatch Act was violated and Defendants' counsel is unaware of any case law finding the Hatch Act is an unconstitutional restriction on speech. *See* Order (Doc. 11) at 2. Thus, Plaintiffs' right to speak on matters of public concern related to the Hatch Act is outweighed by the governmental interest.

Regarding administrative interviews and the claim of retaliation, PCSD has a right to interview an employee, especially where the employee offered to accept and did in fact receive discipline for wrongful conduct and where the employee had apparent knowledge of a crime PCSD was investigating. *See* DSOF ¶¶ 13-14, 31. The interests of the employer to interview persons who may have knowledge of a crime or administrative irregularity clearly outweigh whatever interests Plaintiffs may have to be free to withhold such knowledge. Additionally, for union activity, PCSD's interest in having a right to insist work areas be used for work is substantial counterweight to the speech interests of employees while working, particularly given the alternative speech opportunities that are available at work. *Id*. ¶ 27. Here, for the reasons described herein, there are no clearly established rights against the governmental interests proffered and therefore these interests outweigh Plaintiffs' interest to speak on matters of public concern.

Defendants are also entitled to immunity with respect to the State law claims based on A.R.S. § 12-820.01 because placing someone on administrative leave with pay subject to an investigation conducted in accordance with the rules and policies adopted by PCSD is an exercise of an administrative function involving the determination of fundamental governmental policy. The same rationale applies to the limited restriction on union activity at the academy and the reassignment of Sgt. Cross to the TRC following his offer to receive

BOSSÉ ROLLMAN PC
3507 NORTH CAMPBELL AVENUE, SUITE 111
TUCSON, ARIZONA 85719    520-320-1300

BOSSÉ ROLLMAN PC
3507 NORTH CAMPBELL AVENUE, SUITE 111
TUCSON, ARIZONA 85719    520-320-1300

written discipline for conduct at issue in this case and Sheriff Nanos' undisputed authority to make reassignments within PCSD. *See* DSOF ¶¶ 13-14, 19-20.

### D.    SGT. CROSS VIOLATED THE HATCH ACT.

The Court already found Sgt. Cross' conduct on October 12 and 14, 2024 violated the Hatch Act, as amended, 5 U.S.C. §§ 7321-7326, made applicable to employees of state and local agencies receiving federal funds under 5 U.S.C. §§ 1501-1508:

> The Court can conclude from looking at the photographs from Saturday, October 12, 2024, and Monday, October 14, 2024, that Plaintiff Cross was certainly attempting to look like an on-duty deputy. It appears to the Court, the use of a firearm, handcuffs, tactical gear, and boots was done with this intention, and the Hatch Act precludes such conduct. *See* 5 U.S.C. § 1502(a) (Under the Hatch Act, "[a] State or local officer or employee may not . . . use his official authority **or influence** for the purpose of interfering with or affecting the result of an election or a nomination for office.") (emphasis added)); *see also U.S. Office of Special Counsel Letter*, Ex. C, Doc. 8-7 at 2 ("[S]tate and local employees violate the Hatch Act when they . . . **trade on the influence of their positions** . . . .").

Order (Doc. 11) at 2. Thus, the doctrine of Law of the Case warrants summary judgment on all claims in the Complaint related to the Hatch Act thereby prohibiting the conduct Plaintiffs seek to resume. Moreover, Plaintiffs admit Sgt. Cross engaged in political activity the next day, October 15, 2024, following placement on administrative leave with pay while wearing the same clothing and items the day before. *See* DSOF ¶ 8. Thus, Sgt. Cross' speech was not chilled.

The Court's finding the Hatch Act was violated is consistent with the longstanding principle that government employees may not engage in political speech while in uniform, even if off duty. This restriction is not subject to a balancing test to determine if it is constitutional because the balancing test was already performed by the United States Supreme Court in *U.S. Civ. Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 564 (1973), rejecting an argument a similar restriction was unconstitutional. ("Although Congress is free to strike a different balance than it has, if it so chooses, we think the balance it has so far struck is sustainable by the obviously important interests sought to be served by the limitations on partisan political activities now contained in the Hatch Act.").

The principle established in *Letter Carriers* is that the government may restrict political speech of its employees without offending the Constitution. That decision has never been overruled. This federally created restriction applies to local agencies receiving federal funds and has become embedded as a standard provision in established policies and regulations of government and agencies including Pima County and PCSD. A failure to enforce this restriction risks the loss of federal funding relied upon by state and local law enforcement agencies to operate and keep the community safe.

E.     FINDING THE HATCH ACT WAS VIOLATED IS FINAL AND UNAPPEALABLE.

The denial of injunction and finding the Hatch Act was violated is final and the period to appeal such ruling expired. This ruling has a ripple effect on the remainder of the case. Under Rule 54(a), "Judgment … includes a decree and any order from which an appeal lies." Thus, appeals may be taken from (1) final decisions and (2) a limited category of other, non-final interlocutory rulings. One such limited category is injunctions, including but not limited to the denial thereof, which are immediately appealable. *See* 28 U.S.C. § 1292(a)(1); *Nat. Res. Def. Council v. Cty. of Los Angeles*, 840 F.3d 1098, 1101 (9th Cir. 2016). The period to appeal the denial of injunction is 30 days from the entry of the order. *See* 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A); *Sherron v. Jackson*, 323 Fed Appx. 220, 221-222 (4th Cir. 2009) (appeal from entry of preliminary injunction dismissed because appeal was not filed within 30 days of its entry).

For these reasons, summary judgment on all Hatch Act related claims is warranted on the substantive and procedural grounds raised herein.

F.     POBR WAS NOT VIOLATED AND SGT. CROSS HAS NO STANDING.

Plaintiffs contend Defendants violated POBR. Defendants dispute this contention. Regardless, to have standing to maintain a claim for violation of POBR Sgt. Cross must have received a "disciplinary action." *See* A.R.S. § 38-1103(A) ("A law enforcement officer is not subject to disciplinary action except for just cause."). "Disciplinary action" is defined as "the dismissal, the demotion or any suspension of a law enforcement officer that is a result of

misconduct or unsatisfactory performance." A.R.S. § 38-1101(3). It is undisputed Sgt. Cross did not receive "disciplinary action" and placement on administrative leave with pay pending the outcome of an investigation did not constitute a suspension. *See* DSOF ¶¶ 20-21. Consequently, no violation of POBR occurred. Plaintiffs lack standing to argue otherwise and therefore summary judgment is warranted on all claims related to POBR.

G.    PIMA COUNTY MEET AND CONFER ORDINANCE 2.20.040 WAS NOT VIOLATED.

Plaintiffs contend Pima County Meet and Confer Ordinance 2.20.040 ("Ordinance") was violated because of Exhibit G to the Complaint, a partial text message response from PCSD Chief Moretz to a question posed. The text message states:

From Chief Moretz:

Speaking with the sheriff – there is to be NO labor group presentations at the academy. Labor group recruitment will not be facilitated by the department – they will have to discover recruiting strategies that do not happen during work hours. Also, academy staff and all trainers (including CTO and FTO) will not discuss union membership with trainees.

*See* Ex. G to Compl (Doc. 31-1 at 20). The Ordinance pertains to limitations on discussion related to employee organization on non-county working time. It does not restrict a prohibition of such discussion on county working time, which the text message at issue speaks to. Thus, there is no violation of the Ordinance and Plaintiffs have not suffered the required concrete and particularized injury for standing. Moreover, Plaintiffs admit other alternatives exist and are in fact used to solicit deputies and recruits in the academy as described above. *See* DSOF ¶ 27. Lastly, there is no statutory right to claim damages and there is no implied right to do so regarding the Ordinance.

For these reasons, summary judgment is warranted on all claims related to the Ordinance.

H.    DEFENDANTS WERE NOT NEGLIGENT AND PLAINTIFFS SUFFERED NO DAMAGES.

Like all claims in the Complaint, negligence fails because Plaintiffs did not suffer nor allege sufficient injury to establish Article III standing. Attorney's fees and time are not enough.

Despite being required for negligence, the Complaint does not allege a physical injury nor did one occur. *See* DSOF ¶ 28. To the extent Plaintiffs intend to claim emotional distress, which has not been disclosed and Defendants dispute, the claim fails because a negligence claim for emotional distress must be manifested by a physical condition, which did not occur:

> As long as the risk exposure remains within the realm of speculation, it cannot be the basis of a claim of injury against the creator of that harm.
>
> ….
>
> In *Wetzel v. Gulf Oil Corp.*, 455 F.2d 857 (9th Cir.1972) the Ninth Circuit predicted Arizona would also follow Restatement (Second) of Torts § 436A, which provides:
>
> If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance.

*See DeStories v. City of Phoenix*, 154 Ariz. 604, 607-609 (App. 1987). Consequently, Defendants have no liability under the Complaint for negligence.

For these reasons, summary judgment is warranted for the negligence claim in the Complaint.

**IV.    CONCLUSION.**

For the reasons contained herein, Defendants are entitled to an order from this Court granting summary judgment as to all counts in the Complaint. Defendants request an award of their attorney's fees and costs incurred under 42 U.S.C. § 1988 and Fed R. Civ. P. 54(d).

RESPECTFULLY SUBMITTED April 6, 2026.

BOSSÉ ROLLMAN PC


By: /s/ Kevin J. Kristick
Richard M. Rollman
Kevin J. Kristick
Attorneys for Defendants

BOSSÉ ROLLMAN PC
3507 NORTH CAMPBELL AVENUE, SUITE 111
TUCSON, ARIZONA 85719    520-320-1300

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 6, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Steven J. Serbalik
STEVEN J. SERBALIK, P.L.C.
Unit 116
4925 East Desert Cove Avenue
Scottsdale, Arizona 85254
steveserbalik@gmail.com
Attorneys for Plaintiffs

By:  /s/ Bille Jo Labby

BOSSÉ ROLLMAN PC
3507 NORTH CAMPBELL AVENUE, SUITE 111
TUCSON, ARIZONA 85719    520-320-1300

S:\Cli\26175.023\Pleadings\MSJ.docx                15